UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS WELFARE AND PENSION FUNDS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10 C 6890 |
| v. | ) ) | Judge John W. Darrah |
| J&S TRANSPORT, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Trustees of the Suburban Teamsters of Northern

Illinois Welfare and Pension Funds's Motion for Summary Judgment as to their

Complaint filed against Defendant J&S Transport, Inc. ("J&S"). Plaintiffs' Complaint is

an ERISA collection action for payment of delinquent contributions, brought pursuant to

29 U.S.C. §§ 1132, 1145.

### BACKGROUND[1]

*Preliminary Objection*

Plaintiffs have objected to certain paragraphs of J&S's response to its statement of

facts. In responding to Plaintiffs' statements of fact, Local Rule 56.1(b)(3)(B) requires

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Under Local Rule 56.1(b)(3)(C), the nonmoving party may file a statement of additional facts, and the moving party may submit a concise reply under Local Rule 56.1(a)(3). J&S did not file a 56.1(b)(3)(C) statement.

J&S, in the case of disagreement, to cite "*specific* references to the affidavits, parts of the record, and other supporting material." Local Rule 56.1(b)(3) (emphasis added); *see Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir. 1995) (observing that non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."). J&S has failed to meet this requirement. A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Therefore, in these instances, Plaintiffs' facts will be admitted.

*Facts*

The following facts are taken from Plaintiffs' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiffs are the Trustees of the Suburban Teamsters of Northern Illinois Welfare and Pension Funds (the "Funds" or, specifically, the "Pension Fund" or "Welfare Fund") and are fiduciaries, as defined under 29 U.S.C. §§ 1002(2)(A) and 1132. (Pls.' 56.1(a)(3) ¶ 3.) The Funds are Taft-Hartley multi-employer fringe benefit funds governed by ERISA and 29 U.S.C. § 186(c). (*Id.*) Plaintiffs have standing to bring this action under 29 U.S.C. § 1132(g)(2). (*Id.*) The Pension Fund is an "employee pension benefit plan," as defined in 29 U.S.C. § 1002(2). (*Id.* ¶ 4.) The Welfare Fund is a covered "employee welfare benefit plan," as defined in 29 U.S.C. § 1002(1). (*Id.*)

J&S is an Illinois corporation, engaged in the transportation, hauling and trucking of construction materials. (*Id.* ¶ 5.) James Wilhelm ("Wilhelm") is the President of J&S, Jack Miller is the Comptroller of J&S; and until July 2010, Rickie Wilhelm ("Rickie") was

2

the Secretary of J&S. (*Id.* ¶¶ 12-13.) J&S has had a collective-bargaining agreement (the "CBA") with Teamsters Local 179 since 1997. (*Id.* ¶ 11.) All of J&S's employees are members of Teamsters Local 179, all of whom have a prior contribution history to the Funds. (*Id.* ¶¶ 6-7, 32.) This CBA remains in force and has not been canceled or terminated. (*Id.* ¶ 9)

Articles 9 and 10 of the CBA provide a penalty for failure to pay health and welfare and pension benefits, providing that: "In the event the employer has been found to be delinquent, the Employer shall be required to pay in addition to the actual delinquency 10% of the liquidated damages and accountant and attorneys' fees and court costs." (*Id.* ¶¶ 36-37.)

The Welfare and Pension Trust Agreement (the "Trust Agreement") is incorporated into the CBA. (*Id.* ¶ 39.) The Trust Agreement establishes the Plaintiffs' rights in their fiduciary capacities to demand and collect contributions of employers and to audit payroll records. (*Id.*) Further, the Trust Agreement obligates the employer to pay interest on all monies that are owed to the Funds and an additional sum of 1/20th of the total amount due for each month that the employer contributions remain unpaid as liquidated damages. (*Id.* ¶ 40.)

Pursuant to the CBA, J&S is obligated to file reports and pay monthly contributions to the Funds at rates determined by the Funds for the benefit of the eligible employees. (*Id.* ¶ 18.) J&S has a computer system that verifies the hours worked by its employees. (*Id.* ¶ 8.) Rickie had the responsibility of entering the total welfare and pension contributions into the J&S accounts payable ledger and Miller would give his approval to pay it. (*Id.* ¶ 16.) Rickie also filled out monthly fringe-benefit report forms ("Report

Forms"), relying on the computer payroll records, which totaled the amounts due to the Funds. (*Id.* ¶ 15.) The hours and amounts on the J&S Report Forms are tabulated and taken directly from J&S's computer records. (*Id.* ¶ 26.) Any challenge to the Report Forms could be easily verified by the computer system. (*Id.* ¶ 15.) For December 2009 through June 2010, Rickie prepared, but did not submit, Suburban Teamsters Report Forms and signed them as accurate. (*Id.* ¶ 18.) These reports were correct as to the persons performing the work and the hours reported, and total $85,986.86. (*Id.* ¶ 17.)

The monthly Report Forms submitted by J&S contain a certification that provides: "I certify the above is a true and complete reporting of weeks and/or days worked by employees represented in the Collective Bargaining (or Participation) Agreement." (*Id.* ¶ 22.) Rickie signed this certification for the reports in December 2009 through June 2010, and Miller signed the report for July 2010. (*Id.* ¶ 23.)

In August 2010, Richard Siebert, Plaintiffs' compliance auditor, conducted an audit of J&S's books and records for the period January 2008 through June 2010. (*Id.* ¶¶ 24, 46.) On January 24, 2011, J&S made a payment for two employees', Douglass Hamm's and Bart Morganegg's, contributions for December 2009 through July 2010. (*Id.* ¶ 27.) J&S has not made any payments for the other J&S employees for the period December 2009 through July 2010. (*Id.*) Hamm and Morganegg worked for J&S from March 2011 through September 2011, during which the Pension Fund received no contributions or Report Forms for them. (*Id.* ¶ 28.) J&S completed and signed these Report Forms but did not submit the Report Forms to the Funds; these Report Forms total an additional $23,956.29. (*Id.* ¶ 44.)

4

J&S has never challenged the August 2010 audit. (*Id.* ¶ 47.) After J&S made payment on January 24, 2011, the audit was revised to show credit for the payment received. (*Id.* ¶ 48.) J&S did not challenge the revised audit. (*Id.*) The total amounts delinquent by J&S, for the period January 1, 2008 to July 2010 and March 2011 through September 2011, is $122,813.98. (*Id.* ¶¶ 53-54.) This amount is inclusive of ten percent liquidated damages provided by the CBA and Trust Agreement and interest on late and unpaid amounts. This amount and the corresponding underlying documents are explained in Sieber's affidavit, submitted with Plaintiffs' Rule 56.1(a)(3) statement ("Sieber Affidavit"). (*See* Dkt. No. 26-6.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict

5

for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

Plaintiffs claim that J&S owes the amounts described in the Siebert Affidavit, as well as additional interest and fees contemplated by the CBA. J&S has admitted almost all of Plaintiffs' material statements of fact; as to the statements J&S denied, J&S failed to cite to any specific record evidence creating a disputed issue of fact.[2] Consequently, there are no material facts in dispute.

J&S has submitted a four-page response brief in which it argues that two fact issues preclude summary judgment. First, J&S argues that it has not signed a current CBA and thus may not be covered by the CBA for the relevant timeframe. (Resp. at 3.) This argument is contrary to the undisputed facts. J&S's response to the Plaintiffs' following statements of fact was "admit": "J&S sent no notice to Teamsters 179 of any intent to terminate the collective bargaining agreement [and the] contract has not been rescinded or revoked and remains in effect" and "The contract with Teamsters Local 179 [the CBA] remains in force and effect." (*See* J&S Resp. to Pls.' 56.1(a)(3) ¶¶ 9, 11.)

Second, J&S argues that there is a question of fact as to whether proper credits were provided for the amounts paid for Hamm and Morganegg. Relatedly, J&S argues

---

[2] Of Plaintiffs' 55 statements of fact, J&S "denies" approximately 21 statements. But 12 of the 21 denials were in response to Plaintiffs' quotation from the CBA and Trust Agreement. J&S merely states that it "affirmatively states that the referenced Agreement speaks for itself when read in its entirety." (*See* J&S Resp. to Pls.' 56.1(a)(3) ¶¶ 19, 30, 34-42, 50.) This is not a denial. Some of the remaining denials are addressed later in this ruling.

that the damages amount claimed by Plaintiffs "has not been properly set forth and the calculations underlying the amount claimed due have not been provided." (Resp. at 4.) This argument, too, is contrary to the undisputed facts. Plaintiffs have submitted the Sieber Affidavit, which describes the documents upon which Sieber relies to reach his calculation and attaches the underlying documents themselves, which consist of the J&S Report Forms, signed and prepared by Rickie and Miller.

The Seventh Circuit holds that once Plaintiffs present an audit report and establish an absence of company records contradicting the audit report, the burden is on J&S to establish a genuine issue of material fact barring summary judgment. *Laborers' Pension Fund v. RES Envtl. Services, Inc.*, 377 F.3d 735, 738 -739 (7th Cir. 2004); *see also Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 265 (7th Cir. 2003) (*Reinke*). As the Court of Appeals explained in *Reinke*:

> [O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper. If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment. Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment.

347 F.3d at 264-65.

J&S has not met its burden of establishing a genuine issue of material fact barring summary judgment. Indeed, J&S has made no attempt to contest the Sieber Affidavit with any counter-affidavits or record evidence. In response to Plaintiffs' statements of fact regarding the Sieber Report, J&S responds only that "[J&S] affirmatively states no

7

calculations were presented to verify the amounts claimed." (*See* J&S Resp. to Pls.' 56.1(a)(3) ¶¶ 17, 44, 53-54.)  As discussed above, this is not true.

Plaintiffs have submitted undisputed evidence that it is entitled to the amounts enumerated in the Sieber Affidavit.  Therefore, Plaintiffs' Motion for Summary Judgment is granted, and damages are awarded to Plaintiffs in the amount of $122,813.98. Plaintiffs may seek the twenty-percent liquidated damages, attorneys' fees, and costs as provided under 29 U.S.C. § 1132(g)(2).

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment [26] is granted.

Date: 6-27-12

JOHN W. DARRAH
United States District Court Judge